IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Joseph Dickerson, | ] | CIVIL ACTION #: _____ |
| Plaintiff, | ] | |
| -vs- | ] | **VERIFIED COMPLAINT**<br>**(Jury Trial Demanded)** |
| Bryan P. Stirling, | ] | |
| Defendant. | ] | |

Pro se, Plaintiff upon his personal knowledge allege as follows:

### PARTIES

1. Plaintiff is a citizen and resident of Columbia, South Carolina.

2. At the time of the incident at issue in this case, the Director of South Carolina Department Of Corrections is employed by the State of South Carolina ("SCDC") located at Columbia, South Carolina. At all relevant times, Stirling is a person acting in the course and scope of his duties as Director of SCDC and was acting under the color of state law. Stirling is being sued in his individual capacity.

3. Under South Carolina law, the Director shall have authority to make and promulgate rules and regulations necessary for the proper performance of the Department's functions.

4. Upon knowledge, Defendant Stirling is still the Director of South Carolina Department Of Corrections, and he is a citizen and employed in the County located within this Division.

## JURISDICTION/VENUE

5. Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate his rights guaranteed by the 8th and/or 14th Amendments to the United States Constitution. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this District under 28 U.S.C. § 1391 and the most substantial part of the events or omissions giving rise to this claim occurred in this District.

## FACTUAL ALLEGATIONS

7. On April 15, 2018, fighting began at about 7:15 p.m. Sunday at one of the housing units at Lee Correctional Institution, in Bishopville, about 60 miles northeast of Columbia. Detention officers had been conducting a nightly check-in when the confrontations started, state Corrections Director Bryan Stirling said at a news conference Monday. Two more fights broke out at about 8:30 p.m. at two other housing units at the prison.

8. At least seven inmates died and 17 others were injured during eight hours of rioting at a maximum-security prison in South Carolina on Sunday and Monday, a lengthy series of clashes that authorities said gained fuel because of contraband cell phones inmates carried within the facility.

9. Stirling said it is unclear exactly what prompted the riots but said that officials believe word of the fights spread from the first dorm to the others through contraband cell phones.

10. On April 16, 2018 at a live press conference, Gov. Henry McMaster (R) expressed confidence in Stirling as the head of the Department of Corrections and said at a news conference that the riot was an unfortunate but unsurprising incident. He said inmates "take their violent ways with them" when incarcerated."We know that prisons are places where people who have misbehaved on the outside go for rehabilitation and also to take them from the general population," McMaster said. "It's not a surprise when we have violent events take place inside the prison, any prison in the country. … It is unfortunate when they do happen, but this is one of those instances when they did."

11. Lee Correctional Institution is one of South Carolina's highest-security prisons; inmates generally are under tight monitoring and their movements inside the facility are limited. Of South Carolina's nine all-male, maximum-security prisons, Lee Correctional is the largest. The prison houses about 1,600 male inmates, the majority of them in general housing, according to state record. See:https://www.washingtonpost.com/news/post-nation/wp/2018/04/16/south-carolina-prison-riot-at-least-7-inmates-dead-at-lee-correctional-institution/.

12. As a result of the riot, on June 18, 2018 a total of 48 male inmates from medium (Level 2) and maximum (Level 3) security prisons throughout the state ("Level 3: 6 Lee; 4 Perry; 7 Broad River; 9 Lieber; 1 McCormick; Level 2: 7 Ridgeland; 3 Kershaw; 4 Evans; 2 Tiger River; 1 Allendale 1; and 1 Wateree") was selected to be the "perfect scapegoats" to an involuntarily out of state transfer of them to Mississippi.

13. The South Carolina Department of Corrections has transferred 48 inmates out of state after causing "major problems," according to an SCDC spokesperson. The 48 "problematic" inmates were transferred to Tallahatchie County Correctional Facility in Tutwiler, MS on June 19 and June 21. TCCF is a medium-security private prison that is owned and operated by CoreCivic, which is a company that owns and manages private prisons.

14. SCDC would not elaborate on the "major problems" caused by the transferred inmates, citing ongoing investigations within state correctional facilities. It was unclear what role, if any, the transferred inmates played in the disturbance or how many were at Lee at the time, S.C. Department of Corrections Director Bryan Stirling said. The four dozen inmates came from facilities throughout the state.

15. Stirling, the Corrections Department Director, said officials had considered transferring troublesome inmates out of state before the riot, but an executive order signed by the governor afterward helped pave the way for the measure. Stirling ordered the out of state involuntary transfer pursuant to state law and SCDC policy. Other states have made similar moves with troublemakers behind bars, he said. "This is Corrections 101," Stirling said.

16. Each inmate's status would be subject to review to see if a transfer back to South Carolina justified. See:http://www.wistv.com/story/38489005/48-problematic-sc-inmates-transferred-to-private-mississippi-correctional-facility/;alsohttps://www.postandcourier.com/news/after-south-carolina-riot-problematic-inmates-shipped-to-private-mississippi/article_c22c925c-7626-11e8-9fcf-c75dcca4f8ec.html.

17. Plaintiff was convicted and committed to the general population of South Carolina Department of Corrections to serve out consecutive sentences: (1) (No-Parole Offense) Trafficking Cocaine 25 years to be run consecutive to; (2) (Parolable Offense) Armed Robbery 25 years and Conspiracy 5 years.

18. In the past 10 years the Plaintiff only had 3 disciplinary violations: (1) Possession of Contraband on January 24, 2010; (2) Possession of Cell phone on September 26, 2011; and Possession of Cell phone on August 1,2012. No more write-ups since. Neither has Plaintiff ever been labelled or titled as a member of any Security Threat Group ("STG").

19. In September 2013, Plaintiff was classified as medium security custody ( Level 2) and shortly thereafter transferred to a Level 2 prison. Sometime in or about June 2014 Plaintiff was sent to Ridgeland Correctional Institution located in Ridgeland, South Carolina. After arriving, he was employed as the prison's staff barber being responsible for cutting all staff members hair only. He maintained this employment up until he was involuntarily transferred to Mississippi.

19. Prior to this involuntary out of state transfer, Plaintiff was currently participating in a productive rehabilitation program title by SCDC "Character Based-Unit also know as CBU. (See SCDC: PS- 10-19 -- PS - 10.19 http://www.doc.sc.gov/policy/policy.html).

20. Plaintiff has a legal malpractice lawsuit pending in Richland County Court of Common Pleas in which, the pending case was placed on the docket for a jury trial. Also, The Giese Law Firm been helping him since April of 2014 at receiving a favorable judgment in another matter.

21. This transfer has caused an atypical hardship different of regular prison life for example: being house in open population; being allowed to walk to the cafeteria to eat; walking to the law library several times per week and receiving assistance from the inmate law clerks; being allowed to pay for outside dental and medical care; being allowed to visit sick family members in the hospital or attend funeral proceedings in the case of death (see: S.C. Code §24-3-220); being allowing to work outside the unit and in prison industries for monetary wages; being allow to request a hardship transfer to be closer to family (See SCDC: OP-21-04 -- OP-21.04 http://www.doc.sc.gov/policy/policy.HTML); attending weekly religious services; or going to school/ vocational training; and receiving a hearing to challenge any rule violations/appeals.

22. Plaintiff was involuntarily transferred as a form of punishment and a response to the Lee riot, without any rule violation being committed or any form of procedural due of process.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. The Plaintiff is only required to exhaust administrative remedies that was available to him. In the instant case, Plaintiff was transferred to Kirkland Correctional Institution on the morning of June 18, 2018. After arriving Plaintiff was met by Kirkland's Warden Willie Davis and Associate Warden Whittington who witnessed Plaintiff being escorted to an unoccupied wing. Plaintiff was stripped to only his boxers, socks, and t-shirt, then placed in a cold one-man cell.

24. Plaintiff demanded to know why he is being treated like this and requested a grievance form and phone call to lawyer. My request was repeatedly denied as well as any writing utensils and paper. On June 19, 2018, the first group was allowed to pack a shipping box before being escorted to an unusual transportation bus.

25. The following day, the second group was allowed to pack a shipping box. The officers that inventoried my property, allowed me to grab a pen and a few sheets of paper. I handwritten a detailed grievance addressing the treatment and transfer. I signed and dated it for June 20, 2018.

26. The next morning June 21, 2018 the second group was escorted to the visitation room awaiting to aboard the unusual transportation bus. I personally placed my detailed grievance complaint in Warden Davis's hand, who assured me he would deliver it to the right people.

27. About 6 months after arriving to TCCF and receiving no response from the first grievance, a second grievance was filed with TCCF: (1) challenging not being able to work outside of my living quarters; and (2) re-citing the same grounds as the first unresponded grievance. See attachment: Exhibit 1 and 2.

28. Plaintiff tried to resolve this mistaken transfer with Stirling via mail. See attachment: Exhibit 3. To this day, no response from the letter or from the June 20, 2018 grievance. On February 1, 2019 Plaintiff received a response to the grievances filed with TCCF. See attachment: Exhibit 1 and 2. The response was a dead-end.

29. For these reason and others, administrative remedies was made unavailable and/or difficult to use. Although, I tried my very best to correct this mistake by making several failed attempts to resolve this matter administratively.

## INJURY

30. Being labelled as "Problematic" and "Shot-Caller" publically by a state official, has caused

an undeniable amount of stress and mental anguish, which is causing the Plaintiff high blood pressure and an increase weight by 25 pounds these past 9 months. I had no blood pressure or weight problems before the transfer. This mistaken transfer has caused mental and physical harm to my 80 year old parents. Also, there has been undeniable strain to my relationship with my lawyers at the Giese Law Firm. To make matter worse, it's even harder to prepare, research and investigate pertinent matters regarding my pending legal malpractice action which can be called for trial any day now. Also, a loss of time in the CBU program and others.

31. With the State's General Assembly working hard on enacting new prison and sentencing reform, this mistaken transfer has made it extremely difficult if not impossible for the Plaintiff to benefit in any changes to the law especially after I'm no longer a participate of the CBU program or able to take part in any positive rehabilitative program. TCCF is not allowing South Carolina inmates to work, attend school or programs claiming SCDC is the blame. I'm actually being confined to the pod 23 hours and 1 hour recreation. This is unusual punishment contrary to the normal prison conditions of general population in South Carolina. See attachment: Exhibit 4,5,6.

32. Psychological depression is causing hatred towards state officials of authority, and is causing the Plaintiff irreparable harm by snatching away his liberties without any form of federal due process and being stigmatized online as 'Problematic' coupled with being sent to Mississippi.

## CAUSES OF ACTIONS

**Count 1: 42 U.S.C. Section 1983 Claim Against Defendant**

33. Plaintiff incorporates all paragraphs above as if fully stated verbatim herein.

34. At all relevant times, the Defendant was acting under the color of state law, and is being sued in his individual capacity for violating the Plaintiff's constitutional rights afforded to him by the Eighth and Fourteenth Amendments of the United States Constitution.

35. At the time of the incident at issue, the Plaintiff had a state created liberty and clearly established rights under the United States Constitution:

    a. To be free from mistaken out of state transfers;

    b. To be free from unequal and different treatment;

    c. To be free from stigmatizing labels;

    d. To be free from cruel and unusual punishment.

    e. To be free to challenge and appeal SCDC's procedures and actions; and

    f. To receive adequate notice and a reasonable opportunity to be heard before involuntarily transferring Plaintiff to Mississippi as punishment.

36. The Defendant violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered in discovery and trial. To use interstate compact as a vehicle to impose a punishment for breaching non-existing SCDC rules violations is egregious and fundamentally unfair which is contrary to the substantive and/or procedural protections afforded by the Fourteenth Amendment of the United States Constitution. The Defendant didn't even offer the minimum requirements guaranteed by the 14th Amendment before taking away the Plaintiff's liberty.

37. The unconstitutional actions, inactions and/or misconduct described herein was objectively unreasonable, capricious, arbitrary and was undertaken intentionally, knowingly and/or in bad faith in complete disregard of Plaintiff's equal protection rights and clearly established safeguards from cruel and unusual punishment.

38. As a direct result of the above constitutional violations, the Plaintiff suffered and continues to suffer emotional, mental and/or physical injury.

## DAMAGES

39. Plaintiff incorporates all paragraphs above as if fully stated verbatim herein.

40. Plaintiff ask for judgment against the Defendant for the following:

   a   For all available actual, compensatory, consequential, economic, noneconomic, nominal and special damages permitted by law;

   b   For punitive damages;

   c   For attorney fees and cost;

   d   For any other damages allowed by law; and

   e   For such other relief as the trier of fact deems just and proper.

## JURY TRIAL DEMANDED

Trial by jury is demanded as to all issues to the extent permitted by law.

**SWORN** and **SUBSCRIBED** before me

On this 11th day of April 2019.

_____
NOTARY PUBLIC OF MISSISSIPPI

Commission Expires: 11/15/2019

_____
Joseph Dickerson #186877, Pro se Plaintiff
TCCF - G15/210
415 US HWY 49 North
Tutwiler, MS 38963

10 of 10